UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIOUS EDWARD FAULKNER,

        Petitioner,

                                                          Case Number: 16-13811
v.                                                   Honorable Linda V. Parker

THOMAS WINN,

        Respondent.
_____/

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS;
GRANTING IN PART AND DENYING IN PART A CERTIFICATE
OF APPEALABILITY; AND GRANTING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

      Demetrious Edward Faulkner is presently in the custody of the Michigan Department of Corrections pursuant to convictions for two counts of first-degree criminal sexual conduct and one count of first-degree home invasion. He seeks habeas corpus relief on the ground that his defense counsel was ineffective. The Court finds that Petitioner's claims do not satisfy the strict standards for habeas corpus relief. Therefore, the Court is denying his petition.

**I.    Background**

      Petitioner's convictions arise from the sexual assault of M.G. at her apartment on June 19, 2012. The Michigan Court of Appeals set forth the following relevant facts in its decision affirming Petitioner's convictions:

> The victim testified that she invited a friend, "Mike," to her apartment one night and that she left the door open for him. When Mike arrived, a man she did not know, who was later identified as defendant, along with another unknown man, came into the apartment as well. The victim was upset that defendant and the other man were there, so she asked Mike to make them leave. Mike then went outside to his car. After Mike left, defendant and the other man sexually assaulted her. The men left and the victim called 911. Thereafter, defendant returned, forced his way into the apartment, and sexually assaulted the victim again. Officer Michael Sampson responded to the victim's earlier telephone call and arrived during the second sexual assault. The victim told Sampson that the only person she "really knew" was Mike. Sampson reported that the victim "looked like an emotional wreck, like something terrifying had happened to her." He also testified that defendant walked out of the victim's bedroom with no shirt, no shoes, and with his pants undone. Sampson interviewed the victim that evening. He testified that the victim's statements to him were "erratic," and that she was "saying different things that happened, trying to give a story but jumping all around, to different places." At times, her story changed. Sampson testified that his report indicated that three men had sexually assaulted the victim.
>
> Sergeant Donald Mandell testified that he interviewed both defendant and the victim. Mandell stated that defendant did not know the victim's name. Based on Sampson's report, Mandell initially believed that three men had sexually assaulted the victim; later, after speaking with the victim, Mandell did not believe that Mike was involved. Mandell acknowledged that some of the victim's statements were inconsistent. He also testified that the victim was "crying" and "shaking" while she spoke with him.

*People v. Faulkner*, No. 316064, 2014 WL 7157383, *1 (Mich. Ct. App. Dec. 16, 2014).

A jury in the Wayne County Circuit Court found Petitioner guilty of two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and

one count of first-degree home invasion, Mich. Comp. Laws § 750.110a(2). On October 14, 2015, the trial court sentenced Petitioner to concurrent terms of imprisonment of 18 to 35 years for each of the first-degree criminal sexual conduct convictions, to be served consecutively to a prison term of 10 to 20 years for the home invasion conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the same ineffective assistance of counsel claim asserted in his current petition as well as a sentencing claim. He also filed a motion to remand for an evidentiary hearing. The Michigan Court of Appeals remanded the matter to the trial court to allow Petitioner to file a motion for new trial based on ineffective assistance of counsel. (*See* ECF No. 5-15, Pg. ID 891.)

The trial court held a hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). Petitioner's trial attorney, Larry Polk, was the only witness. The trial court held that defense counsel was not ineffective and denied the motion for new trial. (*See* ECF No. 5-14, Pg. ID 636.) The Michigan Court of Appeals affirmed Petitioner's convictions, but held that the trial court incorrectly scored an offense variable and remanded for resentencing. *Faulkner*, 2014 WL 7157383. On remand, the trial court reduced Petitioner's minimum sentence for the first-degree criminal sexual conduct convictions by six months and ordered those sentences to be served concurrently with the home invasion conviction.

3

Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same ineffective assistance of counsel claim raised in the court of appeals. The Michigan Supreme Court denied leave to appeal. *People v. Faulkner*, 866 N.W.2d 439 (Mich. 2015).

Petitioner then filed the pending petition for the writ of habeas corpus. He raises a single claim for relief:

> Mr. Faulkner was denied his federal rights to the effective assistance of counsel where defense counsel failed to impeach Sgt. Mandell's testimony using Sgt. Mandell's police report and a recorded interview of [M.G.] and also failed to impeach [M.G.'s] testimony using the recorded interview. Counsel's deficient performance prejudiced Mr. Faulkner and entitles him to a new trial.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an

> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that

5

even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

Petitioner seeks habeas relief on the ground that his defense counsel was ineffective in failing to impeach the victim and Sergeant Donald Mandell using two pieces of evidence – Sergeant Mandell's supplemental report regarding his interview with Petitioner, and the victim's recorded police interview. First, he argues counsel should have used the supplemental report to impeach Sergeant

6

Mandell's testimony that Petitioner did not know the victim's name. Second, he argues that the victim's recorded police interview (which was not shown to the jury) was inconsistent in several material respects with her 911 call (which was played for the jury). He maintains that counsel should have used the recorded interview to impeach Sergeant Mandell's testimony that the interview and 911 call were consistent and to impeach the victim's testimony.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The standard for obtaining habeas corpus relief is " 'difficult to meet.' " *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569

U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A. Supplemental Police Report

The Court first considers Sergeant Mandell's supplemental police report. At trial, defense counsel asked Sergeant Mandell: "…in reviewing the report, did you ever review anything that said Mr. Faulkner did not know [the victim's] name?" (3/21/2013 Trial Tr. at 40, ECF 5-10 at Pg. ID 470.) Sergeant Mandell replied: "Just in his statement that he provided to me." (*Id.*) Assuming Sergeant Mandell's testimony was meant to assert that he wrote down and included in his supplemental report what the Petitioner told him, then his recollection of the statement and what he did with it was incorrect. In fact, Sergeant Mandell's supplemental police report did not indicate that Petitioner did not know the victim's name. It also did not state the contrary—that is, that Petitioner *did* know the victim's name. The report (an account of the interview written by Sergeant Mandell) refers to the victim as Ms. [G]. Petitioner argues this demonstrates that he knew the victim's

8

name and bolsters his defense that he and the victim knew one another and the sex was consensual. Counsel was, he maintains, ineffective in failing to impeach Mandell on this point.

Defense counsel testified at the state post-conviction *Ginther* hearing, but had little recollection of Petitioner's case. Counsel did not even recall the theory of the defense. When asked whether he remembered a reference in a police report to Petitioner not knowing the victim's name, counsel testified, "There was a reference that he did not know the complainant's name." (6/6/2014 Tr. at 10, ECF No. 5-13, PageID.614.) Counsel could not recall where he saw this reference. (*Id.*)

The Michigan Court of Appeals held counsel was not ineffective. *Faulkner*, 2014 WL 715383 at *2. The State court reasoned that the report did not "definitively show[] that defendant knew the victim's name." *Id.* The court found that it was "not a verbatim transcription" of Petitioner's statement; instead, it was Sergeant Mandell's written report of the discussion. *Id.* Because Sergeant Mandell may have simply inserted the victim's name into the report without Petitioner having said it or may have told Petitioner the victim's name, the Michigan Court of Appeals held that Petitioner failed to satisfy the substantial burden of showing counsel was ineffective in failing to use the report. *Id.*

9

According the State court's decision the double deference required under AEDPA and *Strickland*, the Court holds that the decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Defense counsel could have used the supplemental report to impeach Sergeant Mandell's testimony that Petitioner did not know the victim's name or, alternatively, to undermine Sergeant Mandell's general credibility because if Petitioner did not know M.G.'s name that should have been included in the report as it was relevant to Petitioner's claim that the sex was consensual. But attaining one of these objectives was not a certainty and thus there is a "reasonable argument" for counsel's failure to question Sergeant Mandell about the report.

If Sergeant Mandell had been questioned about the report, he may have testified that, although he did not include this detail in the report, he recalled that Petitioner did not know the victim's name. That testimony may have damaged Sergeant Mandell's general credibility because a reasonable officer would likely have included this significant detail in a written report; however, the testimony also would have severely damaged the consent defense. If Sergeant Mandell testified that he had been incorrect and the report indicated Petitioner knew the victim's name, the consent defense would have been bolstered. So cross-examining Sergeant Mandell with his report could have yielded helpful or damaging testimony. Under these circumstances, defense counsel may have concluded that

10

pursuing this line of questioning bore too great a risk of undermining the consent defense, particularly where Sergeant Mandell's investigation was called into question in other ways. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (when deciding whether an attorney's performance was deficient, the court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [defense counsel] may have had for proceeding as [he] did") (internal quotation marks and citations omitted).

Defense counsel cross-examined Sergeant Mandell fairly extensively on apparent gaps in his investigation. For example, defense counsel's cross-examination of Sergeant Mandell revealed questionable efforts to investigate "Mike's"[1] possible involvement in the rape. M.G. told the first responding officer that she had been raped by multiple men, including Mike. She later told Sergeant Mandell that Mike had not raped her. (*See* 3/21/2013 Trial Tr. at 35, ECF No. 5-10, PageID.474.) Without explanation, Sergeant Mandell chose to believe M.G.'s later statement exonerating Mike and asked M.G. to include in her written statement only what happened after Petitioner returned to her apartment, excluding discussion of Mike's involvement. (*See id.* at 34-35, PageID.473-74.) Sergeant Mandell justified this approach by stating, "'Cause that's who we had in custody."

---

[1] Police determined that the man known to M.G. as "Mike" was, in fact, Carl Black. (*See* 3/21/2013 Trial Tr. at 24, ECF No. 5-10, PageID.463.)

(*Id.* at 34, PageID.473.) Sergeant Mandell also failed to include in any written report his follow-up investigation and attempts to locate Mike. (*See id.* at 30, PageID.469.) Defense counsel's cross-examination of Sergeant Mandell, as a whole, raised significant questions about the thoroughness of the investigation.

In sum, defense counsel avoided the risk of undermining the consent defense by declining to impeach Sergeant Mandell with the supplemental report, but nevertheless exposed several investigative inconsistencies and shortcomings by pursuing other avenues of cross-examination. Petitioner fails to show that the Michigan Court of Appeals' decision holding that trial counsel was not ineffective is neither contrary to, nor an unreasonable application of Supreme Court precedent.

### B. Victim's Videotaped Interview

Petitioner also argues that counsel was ineffective in failing to use the victim's recorded police statement to impeach her and Sergeant Mandell. At trial, Sergeant Mandell testified that the recorded interview focused primarily on what happened when Petitioner returned to the victim's home after the other two men left, but there was some discussion about what occurred prior to Petitioner's return. The prosecutor asked whether the victim's statement was consistent with her 911 call. Sergeant Mandell testified that it was. (*See* 3/21/2013 Trial Tr. at 21, ECF 5-10 at Pg. ID 460.) Petitioner argues that, in fact, it was inconsistent and counsel was ineffective in failing to cross-examine Sergeant Mandell on that point.

Similarly, he argues that defense counsel should have cross-examined the victim on the inconsistencies in her 911 call, her police statement, and her trial testimony, most importantly her conflicting accounts of the number of men who raped her. In the 911 call she reported she was raped by three men; in the recorded interview she said she was raped by one man; and, at trial, she testified she was raped by two men.

Petitioner argues that the trial court's decision denying relief on this issue following the *Ginther* hearing is based upon its application of the incorrect legal standard. On habeas review, however, the court accords AEDPA deference to the "last reasoned state-court decision on the merits." *O'Neal v.* Bagley, 743 F.3d 1010, 1020 (2013). In this case, the Michigan Court of Appeals issued the last reasoned state-court decision on the merits and is the opinion to which this Court accords deference.

The Michigan Court of Appeals held that counsel's decision not to use the videotaped interview as impeachment evidence was reasonable trial strategy and that Petitioner was not prejudiced by counsel's decision:

> Based on our review of the video, we find that it was sound strategy to forgo presenting it to the jury and that defense counsel was not ineffective as alleged by defendant. The victim cries throughout the interview. She struggles to recount her story and is visibly distraught. She also makes several statements that were consistent with her trial testimony and she was adamant

that she did not know defendant.  Thus, it was sound trial strategy not to show the video to the jury.  In addition, contrary to defendant's assertions on appeal, Mandell did not testify that all of the victim's statements on the 911 tape were consistent with her statements during the interview.  Rather, he noted that some of her statements were inconsistent, particularly with regard to whether she was sexually assaulted by all three men.  Mandell noted that, during the recorded interview, the victim only spoke about what happened when defendant came back the second time.  Consequently, trial counsel's performance was not objectively unreasonable.

Furthermore, even assuming trial counsel's strategy was unsound, defendant cannot show that he was prejudiced by counsel's alleged shortcomings.  At most, the video could have shown that the victim presented conflicting stories about how many individuals sexually assaulted her.  Such information was cumulative to testimony that had already been admitted. Sampson testified that the victim reported that all three men had sexually assaulted her; this was inconsistent with the victim's testimony at trial.  Defense counsel adequately explored this discrepancy through cross-examination.  In addition, Sampson testified that the victim's initial statements about the assaults were "erratic," that she was "saying different things," and that the victim gave "bits and pieces" of information, jumping "between the three males that had entered the location, going from one male to another male[.]"  Overall, Sampson opined that the victim's initial statements were "[j]ust everywhere ."  Thus, there was already information before the jury that the victim made conflicting reports about how many individuals sexually assaulted her. *See People v. Carbin*, 463 Mich. 590, 604-605; 623 N.W.2d 884 (2001) (explaining that where evidence was "for the most part, cumulative[,]" there was not a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would not have been

> different). And, we note that all of the victim's
> statements, including her statements in the recorded
> interview, contained one constant theme: that defendant
> sexually assaulted her. Therefore, defendant cannot
> prevail on his ineffective assistance of counsel claim.

*Faulkner,* 2014 WL 715383 at *3

The State court's conclusion that counsel's performance fell "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, was not unreasonable. Petitioner argues that the video recording would have discredited the victim by contradicting her trial testimony that she was raped by Petitioner and by one other man (one of the criminal sexual assault convictions is based upon Petitioner's actions in holding the victim down while another man raped her). Defense counsel's decision not to present the video recording was a reasonable strategic decision. The victim's testimony about the number of people who raped her and the circumstances of the rapes was challenged through Sergeant Mandell's and Officer Sampson's testimony, and through the victim's own inconsistent statements. Beyond these inconsistencies, defense counsel also highlighted numerous other inconsistencies in the victim's testimony, including discrepancies between the victim's written statement and her trial testimony.

During the *Ginther* hearing, defense counsel testified that he watched the victim's videotaped interview. (*See* 6/6/2014 Tr. at 8, ECF No. 5-13, Pg. ID 612.) However, counsel was not asked, nor did he volunteer, why he did not admit the

15

videotape into evidence. Nevertheless, the Court "must indulge[s] a strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. The Court must "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as [he] did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011).

Defense counsel may have reasonably concluded that the victim's credibility was adequately called into question through cross-examination of her and the two police officers. Showing the jury the video recording risked eliciting further sympathy for the victim. It was reasonable for counsel to elect to avoid that risk particularly when admitting the videotape did not provide a sufficient counterbalancing gain for the defense. The Michigan Court of Appeals' conclusion that counsel's performance was not deficient was a reasonable application of *Strickland*'s first prong.

With respect to *Strickland's* prejudice prong, Petitioner specifically challenges the last two sentences of the Michigan Court of Appeals' opinion:

> [A]ll of the victim's statements, including her statements
> in the recorded interview, contain one constant theme:
> that defendant sexually assaulted her. Therefore,
> defendant cannot prevail on his ineffective assistance of
> counsel claim.[ ]

*Faulkner*, 2014 WL 7157383 at *3. Petitioner's challenge to this portion of the State court's opinion appears to be twofold: (1) "[t]his conclusion held [Petitioner] to a higher standard" (Pet. at 27, ECF No. 1 at Pg. ID 33); and (2) the holding that no prejudice resulted because the victim consistently alleged she was assaulted was unreasonable.

    First, Petitioner fails to explain in what way the state court employed a higher standard of review than that set forth in *Strickland*. The state court set forth the correct standard for evaluating the prejudice prong and then discussed the many conflicts in the victim's accounts of what happened which *were* placed before the jury. In this context, the court also noted the way in which the victim's testimony remained consistent: that Petitioner raped her. Not only was it reasonable for the Michigan Court of Appeals to consider the evidence presented in evaluating the prejudice prong, it is an accepted means of evaluating whether a petitioner has satisfied *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *United States v. Neuhausser*, 81 F. App'x 56, 63 (6th Cir. 2003) (when considering whether a defendant was prejudiced by counsel's failure to impeach a witness, courts consider the strength of the prosecution's case).

17

Second, Petitioner has not shown that the Michigan Court of Appeals unreasonably applied the prejudice prong to the facts of this case. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. Instead, the Court must ask whether it is "reasonably likely" that the result would have been different. *Strickland,* 466 U.S. at 696. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. The Michigan Court of Appeals concluded that no prejudice resulted because the victim's credibility was effectively challenged. In addition, also relevant to the prejudice analysis is the risk that introducing the video would create more sympathy for the victim. Under the highly deferential standards of *Strickland* and AEDPA, the Michigan Court of Appeals' denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

## IV. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could debate the Court's conclusion with respect to Petitioner's ineffective assistance of counsel claim arising from counsel's handling of Sergeant Mandell's supplemental report. The Court will grant a certificate of appealability with respect to this claim. The Court will deny a certificate of appealability with respect to Petitioner's other ineffective assistance of counsel claim because jurists of reason could not debate the Court's conclusion that he has failed to demonstrate an entitlement to habeas relief.

The Court grants Petitioner leave to appeal in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal if he chooses to appeal this decision. 28 U.S.C. § 1915(a)(3).

s/Linda V. Parker
LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2020